UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| K.W., AN INDIVIDUAL,<br><br>Plaintiff,<br>against<br><br>G6 HOSPITALITY PROPERTY LLC<br><br>Defendant | CIVIL ACTION NO:<br><br><br>COMPLAINT |

COMES NOW the Plaintiff K.W., by and through the undersigned counsel, and respectfully submits her Complaint for damages and makes the following averments.

## INTRODUCTION

1. This action for damages is brought by K.W. ("Plaintiff"), a survivor of sex trafficking, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595.

2. G6 HOSPITALITY PROPERTY LLC ("Defendant") was the owner and operator of the subject premises and subject hotel, doing business as Motel 6 and located at 5101 W. Century Blvd., Inglewood, CA 90304 during the relevant time period in May 2021 and through and inclusive of July 2021, and as such responsible for the subject hotel during the time period Plaintiff was sex trafficked on said premises.

3. During the relevant time period, Defendant was the day-to-day operator of the subject premises located at 5101 W. Century Blvd., Inglewood, CA 90304.

4. During the relevant time period, Defendant G6 HOSPITALITY PROPERTY LLC, as owner and day-to-day operator of the subject hotel, had direct control of all aspects of the manner by which this subject hotel functioned and did business.

5. On information and belief, Defendant G6 HOSPITALITY PROPERTY LLC communicated with staff on premises on a daily basis and conducted daily inspections of the subject property.

6. Plaintiff was born in 2004 and was a minor, age seventeen (17), at the time of her trafficking.

7. Plaintiff meets the definition of a sex trafficking victim as she was trafficked at the subject hotel as a minor. Pursuant to 18 U.S.C. § 1591(a), the sex trafficking of a minor under the age of eighteen constitutes a violation regardless of whether force, fraud, or coercion is demonstrated.

8. Section 1591 of the TVPRA criminalizes sex trafficking by force, fraud or coercion, and separately criminalizes the sex trafficking of minors under the age of eighteen regardless of whether force, fraud, or coercion is established. See 18 U.S.C. § 1591. Separately, §1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking crime. See 18 U.S.C. §1595(a). More specifically, §1595 provides for three distinct causes of action: (1) a claim against the trafficker who directly violated §1591(a)(1) – a criminal statute; (2) a beneficiary claim against the trafficker who directly violated §1591(a)(2) – a criminal statute; and (3) a beneficiary claim against a civil defendant who did not violate §1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or

should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, i.e. a beneficiary claim against a civil defendant.

## PARTIES

9. Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff's name and address is not contained in this Complaint to protect the safety, privacy and identity of this subject sex trafficked victim. Nationwide similarly situated Plaintiffs have proceeded by pseudonym or by their initials due to the foregoing.

10. Plaintiff is currently a resident of the State of New Mexico.

11. At all times relevant and material, Defendant owned and operated a hotel doing business as Motel 6 and located at the address set forth above in paragraph 2 and was authorized to do, licensed to do, and was doing business in the aforesaid State offering the subject hotel as a place of public lodging.

12. The principal place of business of Defendant is 4100 International Pkwy, Carrollton, TX 75007.

## JURISDICTION AND VENUE

13. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely 18 U.S.C. § 1595.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Count asserted in this action occurred in the judicial district where this action was brought, and/or Defendant conducts business within this District pursuant to 28 U.S.C. § 1391(b).

15. The principal place of business of Defendant G6 HOSPITALITY PROPERTY LLC is located at 4100 International Pkwy, Carrollton, TX 75007 within the Eastern District of Texas. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391.

16. As the hotel owner and hotel operator during the relevant time period for the subject properties, Defendant G6 HOSPITALITY PROPERTY LLC, (headquartered at 4100 International Pkwy, Carrollton, TX 75007, within the Eastern District of Texas), controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject properties where Plaintiff was sex trafficked.

## CAUSE OF ACTION

## VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

17. Plaintiff sets forth an action for violation of 18 U.S.C. § 1595 as against Defendant.

18. At all relevant times, Defendant, as owner and operator, was involved in the staffing and operation of Defendant's hotel where Plaintiff was trafficked for sex during the relevant time period of Defendant's ownership in May 2021 and through and inclusive of July 2021.

19. Plaintiff was trafficked by three (3) traffickers, including an individual known as Ariana (now deceased), a male known to Plaintiff as "C-1" (described as a tall Black male with long dreadlocks and a sleeve tattoo), and a second male (described as a large, light-skinned Black male who wore a du-rag).

20. Plaintiff was trafficked alongside at least one other woman at the subject hotel. Plaintiff was initially recruited and lured to California by Ariana, who fraudulently promised Plaintiff that she would be taken care of. Upon arrival in California via Greyhound bus, Plaintiff was immediately seized by force, physically assaulted, and turned over to the male traffickers identified above, who confined and trafficked Plaintiff at the subject hotel.

21. Rooms rented for use for the sex trafficking of Plaintiff on Defendant's subject premises were rented by the traffickers or at the direction of the traffickers.

22. Discovery will inform whether the traffickers, (or individuals at the traffickers' direction), booked rooms at the subject hotel that were used for the sex trafficking of the Plaintiff in violation of the TVPRA:

a. Under the registrant's proper legal name or a false name;

b. Whether cash, prepaid card, debit card or credit card was used at the time of respective booking or renewal; and

c. Whether staff of Defendant required for each booking that the renter show their identification.

23. Defendant knowingly benefited from the sex trafficking of Plaintiff at Defendant's hotel by receiving payment for the rooms rented by her traffickers (or at the direction of her traffickers) that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA in May 2021 and through and inclusive of July 2021.

24. Defendant rented rooms to individuals it knew or should have known were engaged in sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

25. Plaintiff's traffickers used proceeds derived from the sex trafficking occurring on the subject premises to continue to pay for rooms rented at the subject hotel during the time that Plaintiff was being sex trafficked there in violation of the TVPRA.

26. Plaintiff was advertised by her traffickers online for sex which was to occur at the subject hotel, including on Tinder, Plenty of Fish, Snapchat, and/or other online platforms.

27. In addition, Defendant received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur (as Plaintiff was

advertised by her traffickers online) and from such Wi-Fi service Defendant, upon information and belief, received financial benefit.

28. During the relevant time period alleged herein, Defendant took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's traffickers that violated the TVPRA as to the Plaintiff herein.

29. Operating a hotel and renting out rooms is an enterprise involving risk and potential profit.

30. Defendant operating the subject hotel and renting out rooms to Plaintiff's traffickers was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

31. Defendant G6 HOSPITALITY PROPERTY LLC's association with the Plaintiff's sex traffickers was a venture because Plaintiff's traffickers had prior commercial dealings with said Defendant at the subject hotel's premises by means of rooms repeatedly rented by the traffickers (or at the direction of the traffickers) during the time period of Plaintiff's trafficking, which Defendant knew, or should have known, were being used for the sex trafficking of Plaintiff in violation of the TVPRA, and which the parties wished to continue for profit.

32. Defendant's repeated rental of rooms to Plaintiff's traffickers (or individuals renting at the direction of the traffickers), at the subject hotel, was not a standard arm's length transaction, but rather the repeated room rental transactions which occurred during time that Plaintiff was trafficked at the subject hotel, were colored by overt indicators of sex trafficking such that Defendant knew, or should have known, that Defendant was renting rooms to individuals engaged in sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

33. A continuous business relationship existed between Defendant's hotel, its agents, employees and staff, and Plaintiff's traffickers' sex trafficking business, in part, in that Defendant provided assistance, support, or facilitation to the Plaintiff's traffickers by repeatedly renting rooms to individuals they knew or should have known were involved in sex trafficking on the premises in violation of the TVPRA, including as to the Plaintiff herein; and in doing so facilitated the venture's success.

34. Defendant knowingly benefited from this venture, or enterprise, involving risk and potential profit, which was in violation of the TVPRA as to the Plaintiff herein, by receiving payment for the rooms rented by Plaintiff's traffickers (or at the direction of her traffickers) that were used for sex trafficking, including as to the Plaintiff, in May 2021 and through and inclusive of July 2021.

35. Defendant participated in a venture by operating the subject hotel that rented rooms to individuals that said Defendant knew or should have known were involved in sex-trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

36. Defendant participated in a venture that said Defendant knew or should have known was trafficking Plaintiff at Defendant's hotel in violation of the TVPRA.

37. This Defendant knew or should have known that the undertaking or venture violated the TVPRA as to the Plaintiff.

38. Defendant was engaged in a venture with Plaintiff's traffickers through Defendant's staff.

39. Defendant's staff maintained a familiar relationship with Plaintiff's primary trafficker, C-1, who was observed by Plaintiff conversing with Defendant's front desk staff on a regular basis and socializing with hotel staff outside the lobby of the subject hotel.

40. Defendant knew or should have known about the nature of the sex trafficking occurring at Defendant's hotel, including as to the Plaintiff, a victim, due to the many red flags then and there existing, including but not limited to:

a. Steady and continuous foot traffic of sex buyers to the traffickers' rented rooms to have sex with Plaintiff;

b. Plaintiff exhibited visible signs of physical abuse inflicted by her traffickers that were observable by Defendant's staff, including but not limited to bruising on her face and body consistent with being hit, punched, and choked by her traffickers;

c. Plaintiff's traffickers were observed verbally abusing Plaintiff and exercising controlling behavior over her in and around the subject hotel premises, which was witnessed or should have been witnessed by Defendant's staff;

d. Inside the hotel rooms rented by the traffickers (or at the direction of the traffickers) there were suspicious people and suspicious items including condoms and lubricant on the nightstand, lingerie, sexually explicit clothing, and restraints including bungee cords affixed to the bathroom door, which were observed by housekeeping staff or should have been so observed. Additionally, housekeeping staff entered the room and observed Plaintiff unclothed, at which time Plaintiff would attempt to conceal herself under bedsheets or retreat to the bathroom;

e. Plaintiff was observed in and around the hotel premises, including soliciting sex buyers in the parking lot of the subject hotel when online advertisements were not generating sufficient traffic, which is a known indicator of sex trafficking;

f. Multiple women, including Plaintiff, were observed entering and exiting the traffickers' rented rooms, which is a known indicator of a sex trafficking operation;

g. Plaintiff was visibly and clearly underage and with visible bruising;

h. Plaintiff's traffickers utilized fraudulent identification documents, maintaining a stack of fake IDs, to register for rooms at the subject hotel, which is a known indicator of sex trafficking;

i. Google review dating back eight years states in part, "at night each trip on the elevator meant another sketchy person reeking of marijuana or a working prostitute answering a call from her pimp in the elevator with me."

j. Google review dating back ten years states in part, "When we decided to go in and out during the day and go sight seeing, we quickly realized that pimps and prostitutes walk in and out frequently to conduct business if you get what I mean. We checked in today at about 4, and it's only been 6 hours and we've already counted 13 pimps walking in and out of the building and waiting in their car around the corner while prostitutes go in, stay for a bit, then leave. One prostitute was actually sitting in the lobby beat up with a black eye and bruises all over her legs."

k. Tripadvisor review from 2012 states in part, "I wouldnt recommend this place to anyone but pimps and prostitutes, since thats who hovered in the lobby mostly."

l. Tripadvisor review from 2015 states in part, "Pretty sure we saw drug deals going on in the parking lot as well as prostitutes coming and going."

m. Other commonly known sex trafficking red flags which the above captioned Defendant knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotel.

41. Defendant's staff witnessed and observed on a regular and frequent basis signs and indicators of sex trafficking including items set forth in paragraph 40 above.

42. When being trafficked at the subject hotel in May 2021 and through and inclusive of July 2021 during this Defendant's ownership, Plaintiff interacted with Defendant's staff on a frequent basis, and Defendant's staff witnessed and observed Plaintiff, her traffickers as well as a frequent procession of sex buyers going in and out of the subject rented rooms, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

43. Plaintiff knows that some of the individuals that witnessed and observed red flags indicative of sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotel logo and/or by means of a staff member being in an employee restricted area.

44. Defendant's involvement and failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including, but not limited to, being the victim of sex trafficking when at this subject hotel and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day, while being trafficked, and while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries suffered by PTSD.

45. This Defendant, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel room for unlawful purposes, (4) guest uses hotel amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guest's behavior reasonably disturbs other guests, (7) guest violates other rules set by the hotel, and (8) for other indicated reasons.

46. Plaintiff being sex trafficked at this subject hotel was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries including the horror of being a victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked. This trauma led to depression, anxiety disorders, and PTSD, which in turn affects daily functioning.

47. As a direct and proximate result of Defendant's involvement and multiple failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-trafficking efforts at its hotel properties, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendant's hotel in violation of the TVPRA.

48. As a consequence of being sex trafficked at the subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as identified in the above-referenced Count and as follows:

All available compensatory damages for the described losses with respect to the above cause of action;

Past and future emotional distress;

Consequential and/or special damages;

All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

Physical pain and suffering;

Disgorgement of profits obtained through unjust enrichment;

Restitution;

All damages allowable under the TVPRA;

Reasonable and recoverable attorney's fees;

Punitive damages with respect to each cause of action;

Costs of this action; and

Pre-judgment and all other interest recoverable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: February 12, 2026

RESPECTFULLY SUBMITTED,

/s/ Jason Byrd
THE BYRD LAW FIRM
448 Orleans
Beaumont, TX 77701
Telephone: (409) 924-0660
Facsimile: (409) 924-0035
jason@txbyrd.com

Randolph Janis
Randolph Janis, Esq.
DOUGLAS AND LONDON, P.C.
One State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
rjanis@douglasandlondon.com

Chloe Makowsky
Chloe Makowsky, Esq.
DOUGLAS AND LONDON, P.C.
One State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
cmakowsky@douglasandlondon.com
Attorneys for Plaintiff